ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2018-Jan-18 16:55:31
60CV-18-380
C06D06 : 15 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**LEANN BARNES**                                                        **PLAINTIFF**

**V.**                                    **CASE NO. _____**

**STATE FARM FIRE AND CASUALTY COMPANY**                **DEFENDANT**

### COMPLAINT

Comes now the Plaintiff, Leann Barnes, by and through her attorneys, Kayla M. Applegate and Patrick R. James of JAMES, HOUSE, DOWNING & LUEKEN, P.A., and for her Complaint, states and alleges:

### I. PARTIES

1.      The Plaintiff, Leann Barnes, now and at the time of the events giving rise to this Complaint, is a resident of Little Rock, Pulaski County, Arkansas.

2.      The Defendant, State Farm Fire and Casualty Company (hereinafter "State Farm"), is an Illinois corporation registered to do business in the State of Arkansas, is licensed and regulated by the Arkansas Insurance Commission and governed by Arkansas law, and is subject to jurisdiction in Arkansas by virtue of the foregoing as well as the Defendant's continuous and systematic contacts with Arkansas.

3.      The Defendant's registered agent of service according to the Arkansas Insurance Commission is Corporation Service Company whose address is 300 Spring Building, Suite 900, 300 S. Springs Street, Suite 900, Little Rock, Arkansas 72201.

## II.    JURISDICTION & VENUE

4.    This Court has jurisdiction over the parties herein and the subject matter of this suit pursuant to provisions in Arkansas Code Annotated § 16-13-201 and pursuant to Amendment 80, § 19 of the Arkansas Constitution.

5.    Venue is proper before this Court based upon the Plaintiff's county of residence at the time the cause of action occurred and the county where the loss occurred, pursuant to Arkansas Code Annotated § 23-79-204(a).

## III.    FACTUAL ALLEGATIONS

A.    The Homeowners Insurance Policy

6.    The Plaintiff entered into a written contract with Defendant wherein Defendant would provide property loss coverage for Plaintiff's home located at 17 Clifton Drive, Little Rock, Arkansas 72209 in exchange for Plaintiff paying monthly premiums, which are included and paid with her mortgage payment each month. A copy of the Homeowners Policy (hereinafter "the Policy"), Policy Number 04-BJ-D072-9 is attached hereto and incorporated by reference herein as "Exhibit A."

7.    Pursuant to the terms of the Policy, Plaintiff agreed to and has paid monthly insurance premiums as obligated to the Defendant for the relevant policy period, in exchange for Defendant promising to provide the Plaintiff with monthly coverage for losses sustained to Plaintiff's covered property pursuant to the terms of the Policy.

8.    The Plaintiff has continuously made timely monthly payments to the Defendant pursuant to the requirements of this Policy.

9.     Specifically excluded in the policy was coverage for mold; however, in this instance, there would not have been mold had it not been for the failures of State Farm, as will be explained herein. *See* Pg. of Exhibit A.

B.     The April 30, 2017 Loss

10.    Ms. Barnes resided in the covered property with her three children.

11.    In the early morning hours of Sunday, April 30, 2017, straight line winds caused two trees to fall on Ms. Barnes's home, covering the entire length of the home.

12.    The fire department responded and told Ms. Barnes and her three children to evacuate because of live electrical wires.

13.    On April 30, 2017, Plaintiff called State Farm to report and file a claim, but an answering service informed that since it was a Sunday, the case would not be assigned until the next day.

14.    Plaintiff is on a limited, fixed income, so she does not have the ability to pay up front for many unexpected expenses over certain amounts, such as hotel costs.

15.    Fortunately, with the assistance of members in her church, Plaintiff was connected with the Salvation Army, and they paid for her and her children to stay in a pet friendly hotel until State Farm arranged for living accommodations.

C.     Initial Inspection

16.    The first handler of five handlers assigned to Plaintiff's claim never spoke with Ms. Barnes.

17.    It took Entergy five days before they could assess and repair.

18.    Plaintiff contacted a person to provide a bid to remove the trees still on top of the house, and he informed he could also remove the trees immediately (and even in the rain).

19.    When Plaintiff called to report the claim, the claim center of State Farm informed Plaintiff the price for tree removal had to be "reasonable," but Plaintiff could not reach the handler for her to get approval that the amount quoted was, in fact, a reasonable amount.

20.    It took ten days for the adjustor to inspect the property, but he rushed the inspection because he wanted to hurry and get back home and overlooked many issues that needed to be addressed.

21.    Plaintiff attempted to point out issues she had noted but he would not listen and informed he knew what he was doing.

22.    It took approximately two weeks for approval/removal of the trees to be completed.

23.    The tree removal company needed payment at completion, and while State Farm issued payment on May 8, 2017, it was not received until May 13, 2017, so this was the earliest the removal could occur, as once again, Plaintiff could not afford to pay these expenses in advance.

24.    However after completing the work, the payment could not be completed because State Farm made an error and wrote the check payable to the wrong mortgage company.

25.    On May 17, 2017, the company who needed to tarp the house came to the residence.

26.    The tarping was completed on May 17, 2017, but because of the initial delays by State Farm over the seventeen day period, additional rain water entered the roof of the house, causing further water damage, which has resulted in mold.

27.    Plaintiff could not be present for this because on May 14, 2017, Plaintiff had to be transported to the Emergency Room by ambulance because of an unknown (at the time) medical issue. It was discovered Plaintiff had gallstones. On May 17, 2017, Plaintiff had an appointment with a surgeon, and Plaintiff then had to have surgery on May 23, 2017.

28.     Plaintiff was not released from her doctor's care to resume full, normal activities until approximately mid-June.

29.     The Plaintiff's medical issues during this time are important because in denying benefits in the subsequent months, State Farm claimed Plaintiff failed to act promptly in getting work done and hiring contractors; however, as the timeline of her medical issues will show, there was no willful or negligent failure. Plaintiff's delay was only because of her medical issues, which certainly is excusable.

30.     Between May 14th and the time period after surgery wherein she was recovering from surgery (through early June), because of her health issues, Plaintiff was not able to be as active in the claims process.

31.     Even after initially being released from restrictions in June, the health issues continued into July, and it was not until July 12, 2017, that the final restriction release occurred.

32.     The medical issues were clearly out of her control, but Plaintiff still managed to do the best she could to make sure things progressed as quickly as possible under the circumstances.

33.     However, if Plaintiff did have to cancel and reschedule appointments during this time, it was for that reason.

34.     Much of the delay, however, occurred because of communication issues between State Farm and Plaintiff, coverage being denied or not approved and State Farm's failure to return calls from the various persons working to demolish and repair the damage to Plaintiff's home.

D.     Chenal Restoration

35.     On May 31, 2017, Chenal Restoration inspected the Plaintiff's property, and on June 1, 2017, Chenal Restoration packed up most of the personal property, as approximately 70% of the home needed to be repaired.

36.     On June 5, 2017, the demolition of the home by Chenal Restoration began.

37.     Ms. Walther determined that there was water damage in the wall and sought approval for removal and repair.

38.     Neither Plaintiff nor Theresa Walther with Chenal Restoration could reach the handler to gain approval to do the work needed, despite leaving several messages.

39.     Ms. Walther had advised that the bathroom wall in the house needed to be removed entirely because of water damage that then caused mold.

40.     Upon a second handler, Bill Thomas, being assigned to the claim, he refused to approve the work quoted.

41.     State Farm has denied being informed of this issue, and as a result, State Farm has claimed the later discovered mold was excluded under the Policy, thus refusing to pay for the cost of repair; however, Ms. Walther has confirmed she reported this to the first handler to get approval, and she has knowledge and information regarding who she contacted and the dates of attempted contact.

42.     Ms. Walther will also verify the mold was caused by the initial water damage, and as a result should be covered under the Policy.

43.     Had State Farm acted promptly in inspecting the property, approving tree removal and tarp coverage and returning Ms. Walther's calls, then the damage may not have occurred.

44.     Regardless, Plaintiff should have approved for the wall to be removed/rebuilt.

E.      Denials by State Farm

45.     On June 24, 2017, State Farm denied coverage for items lost that Plaintiff's insurance agent had told her would be covered under the Policy.

46.     In addition on June 24th, State Farm informed they would not provide coverage for living accommodations any further because Plaintiff was not being "proactive" with hiring a contractor.

47.     In fact, Plaintiff had been diligently working with obtaining bids from several contractors in order to get the best price, and Plaintiff was still waiting on receipt of bids.

48.     On June 26, 2017, State Farm, again, tried to deny coverage for lodging.

49.     On June 29, 2017, Plaintiff and a State Farm manager engaged in a phone call regarding the denials by the handler, and by July 7, 2017, a third handler was assigned to the claim.

50.     After speaking with the third handler at length on July 7, 2017, a fourth handler was assigned the following day.

F.     Living Expenses

51.     On July 21, 2017, after three months from the loss, State Farm approved Plaintiff and her family for a hotel with adjoining rooms.

52.     The Policy provides for coverage of expenses to maintain an insured's standard of living for up to 24 months when the residence premises is uninhabitable with payment limited to incurred costs for the shortest of: (a) time required for repair or to replace the premises; (b) time required for the household to settle elsewhere; or (c) 24 months. *See* pg. 4 of Exhibit A.

53.     However, instead of providing comparable short term living accommodations, Defendant would only approve hotels.

54.     Plaintiff had to move locations on six total occasions (and three hotels), including once because the hotel ended things on October 20th, and then a second time less than a week later because State Farm failed to approve an extension, so Plaintiff's rooms were re-booked and Plaintiff and her children had to vacate.

55.     On November 28, 2017, food reimbursements were denied and State Farm capped off the lodging and informed it would end on December 22, 2017, so Plaintiff was forced to vacate right before Christmas and rely solely on the charity of others to provide further accommodations.

56.     Right now, Plaintiff is on the verge of becoming homeless, as the charity of others is almost out, and Plaintiff has nowhere to go and no means to pay for expensive hotel living accommodations.

57.     These actions were in bad faith by Defendant.

G.      Repairs, Contractor and Other Communication Issues

58.     It took approximately three months for the contractor and quoted work to be approved so work could begin.

59.     August 2, 2017, roofing supplies arrived, and on August 3, 2017, work began.

60.     On August 11, 2017, the new roof was completed.

61.     The sunroom demolition began on August 15, 2017.

62.     On August 16, 2017, Plaintiff submitted the first batch of personal property reimbursement proof, only for State Farm to lose the itemizations and require Plaintiff to re-do everything.

63.     By September 8, 2017, work on the floors had still not begun, and Plaintiff had to await State Farm to approve several more items that had recently been discovered.

64.     Also during this time, State Farm did not promptly return phone calls to the contractor, so work could not be done until the new issues had been approved by State Farm.

65.     The contractor informed Plaintiff that after leaving multiple messages over the course of weeks and getting absolutely no return calls from the adjuster, if he didn't get one that week to approve these new problems, he was leaving the job.

66.     After Plaintiff reported this to the Arkansas Insurance Department, within two hours, her adjuster called and informed he had just spoken with the contractor and had also found her personal property inventory.

67.     On September 19, 2017, because of Hurricane Irma, State Farm re-assigned a handler, who was then the fifth handler assigned to the claim.

68.     On September 27, 2017, Plaintiff began having issues with her contractor (the floors were stained without having been sanded and damage came as a result), but the contractor, could not be located until October 5th.

69.     On October 24, 2017, Ms. Walther verified the house had mold after State Farm told her to check into it, and she sent pictures of proof. State Farm then denied coverage claiming it was excluded under the Policy.

70.     On October 27, 2017, Plaintiff discovered water damage and mold to the brand new insulation that the contractor done in the sunroom.

71.     On November 1, 2017, Plaintiff spent an hour and a half on the phone with State Farm covering various issues, and Plaintiff also began looking for a new contractor as the current one at the time was unwilling to work further despite repeated texts and calls with no response.

72.     On November 15, 2017, the Plaintiff's new contractor, Chad Haynes, began demolition.

73.     Mr. Haynes was able to gain the approval for all floors in the house to be demolished due to the water damage which should have been done from the very beginning.

74.     On November 20, 2017, the demolition of all floors began. However, State Farm claimed there were only two bedrooms, which was not the case, and the contractor confirmed this. State Farm claimed they could not pay for the hardwood floors in the master bedroom because

there was laminate flooring on top of it. However, the hardwoods were ruined nonetheless. State Farm did finally approve providing prefinished hardwoods throughout the house, even though the previous floors were not pre-finished.

75.     State Farm also refused to increase the price of the kitchen cabinets even though the ones previously installed were no longer made and prices had obviously increased.

76.     On November 29, 2017, a State Farm manager told Plaintiff she was the cause of all the delays.

77.     Plaintiff also informed that her hotel did not, in fact, have a stove or even burners but only a microwave and small fridge, the same as the previous hotel, as State Farm claimed she should be able to cook and not eat all meals out, which was not the case.

78.     Further, Mr. Haynes has been trying to get in touch with State Farm for several weeks regarding the bathroom and pipe issue, and they wholly refuse to communicate with him and will not return his calls.

79.     Mr. Haynes had opened up the sheetrock on the plumbing wall and saw that the water lines and drains were under the crawlspace, and the vent pipe that is connected to the sink drain, toilet and tub ran through the roof. That vent pipe was broken away from the sink drain due to the tree falling on the pipe on the roof, and the sink drain was dumping all of the water from the sink into the cavity of the wall. Further, it disconnected the drain from tub, and the floor had two layers of subflooring 1/2" and 3/4", and upon Mr. Haynes pulling the top layer off on a section, mold and moisture were visible.

80.     In his opinion, the subflooring in the bedroom that is on back side of bathroom will need to be removed and replaced. In order to replace, he will have to remove all flooring and

subflooring in bathroom, and tile on the wall will also have to be remove to get the tub out in order to able to get it to drain to run a new section and then hook it back up.

81. Despite the obvious failures by the original contractor, Plaintiff was discouraged from hiring a new contractor, as she was told it would cause delay. However, Plaintiff was entitled to have a competent contractor perform work in compliance in a good and workmanlike condition.

82. Plaintiff is in the process of filing a claim with the Arkansas Contractors Licensing Board.

83. In the end, there has been delay after delay, most of which have been caused by State Farm refusing to act promptly and approve things covered under the policy, which are necessary to restore Plaintiff's home.

84. Further, Plaintiff has been displaced from her home for approximately nine months. As a result, she has been in a hotel with her three children and dogs for nine months and has had to eat out almost every meal, which has also caused increased food costs.

## IV.    COUNT I – BREACH OF CONTRACT

85. Plaintiff incorporates by reference Paragraphs 1 – 83 as if stated word for word.

86. At the time of the occurrence/loss, Plaintiff had in effect a Homeowners Policy with State Farm that specifically contained provisions for coverage of the repairs needed on Plaintiff's residence, as well as living expenses until all repairs are complete. *See* Exhibit A.

87. The Defendant accepted premium payments from the Plaintiff that were for the Plaintiff's homeowner insurance benefits.

88. The Plaintiff incurred a covered loss under the Policy, which activated the coverage provisions. *See* Exhibit A.

89.     On or about April 30, 2017, the Plaintiff promptly notified the Defendant of her claim as required by the Policy.

90.     On or about December 13, 2017, and again on December 19, 2017, the Plaintiff made demand for compensation for the benefits that she was entitled, which Defendants had failed and refused to pay, including coverage for damage to the bathroom wall previously denied, including resulting mold that would not have occurred if Defendant had approved the work in the when first notified, and living expenses, including food and lodging reimbursement.

91.     Under the terms of the Policy, the Defendant contracted to pay for damages related to the loss by Plaintiff, including repairs and living expenses until the repairs was completed (up to 24 months). After eight months, Defendant wrongfully refused to provide additional living expense reimbursement despite the repairs not being completed and a continuing need for repairs to be approved by State Farm and completed.

92.     The Defendant should have, therefore, paid for all such losses which Plaintiff was entitled to recover pursuant to the Policy's provisions.

93.     The Plaintiff has complied with all conditions precedent and necessary to the institution of this action.

94.     Despite written and oral demand by (or on behalf of) the Plaintiff, the Defendant has failed to pay all of the benefits due to Plaintiff under the provisions of the Policy. *See* Exhibit A.

95.     The Defendant is, therefore, in breach of its contract for insurance benefits with Plaintiff.

96.     The Plaintiff contends that she has incurred damages covered by the Policy, some of which Defendant has failed and refused to pay, and Plaintiff is entitled to recover compensatory damages in an amount to be determined.

97.     The Plaintiff is also entitled to receive continuing standard of living expenses until completion of all repairs, per the terms of the Policy.

98.     Plaintiff is entitled to an award of her attorney's fees against the Defendant pursuant to the provisions of Arkansas Code Annotated § 16-22-308, as well as pre-judgment and post-judgment interest and litigation costs.

## V.     COUNT II – BAD FAITH PURSUANT TO ARK. CODE ANN. § 23-79-208

99.     Plaintiff incorporates by reference Paragraphs 1 – 97 as if stated word for word.

100.    Despite written and oral demand, the Defendant has unreasonably failed to pay Plaintiff the insurance benefits she is due under the terms of the Policy, and the Defendant has acted in bad faith, pursuant to Arkansas Code Annotated § 23-79-208.

101.    Plaintiff had a Homeowners Policy with the Defendant insurance company.

102.    Plaintiff suffered a loss on or about April 30, 2017, and since that time there have been continuing and repeated issues and failures by State Farm to approve coverage expenses.

103.    Defendant wrongfully terminated standard of living expenses, which forced Plaintiff to rely on charity for continued housing, but Plaintiff is at risk for being homeless if expenses are not paid immediately.

104.    Defendant has ceased all communications and will not approve work that needs to be done in order to complete the repairs to the residence.

105. Despite Plaintiffs repeated and arduous attempts to resolve this matter without litigation, the Defendant has failed and refused to approve repairs pay Plaintiff the totality of the amounts she is due pursuant to the terms of the Policy. *See* Exhibit A.

106. Plaintiff is entitled to receive approval for repairs that are still needed from the Defendant under the Policy's provisions, so the residence can be completed, and Plaintiff can move back into her home with her three children.

107. The Plaintiff has continued, without default, to pay Defendant monthly premiums as obligated, per the provisions in the Policy, or risk her claim being denied for a technicality in the Policy.

108. The conduct of State Farm has been egregious and qualifies as bad faith under the Arkansas statutory code.

109. Therefore, under Arkansas statutory law, in addition to the amount of the loss Plaintiff is entitled to under the Policy, she is entitled to 12% damages upon the amount of her loss, together with all reasonable attorney's fees for the collection and prosecution of her loss, pursuant to Arkansas Code Annotated § 23-79-208.

110. Plaintiff's damages exceed the amount necessary for Federal Court jurisdiction in diversity of citizenship cases, exclusive of interest and costs.

## VI.   DEMAND FOR JURY TRIAL

111. Plaintiff requests and demands that all issues of fact be tried before a jury of Plaintiff's peers pursuant to Rule 38 of the Arkansas Rules of Civil Procedure.

WHEREFORE, the Plaintiff prays for judgment against the Defendant for her actual and compensatory damages in an exact amount to be determine, all which are in excess of the amount necessary for Federal Court jurisdiction in diversity of citizenship cases, exclusive of interest and

costs; for 12% penalty on the amount of loss according to statute; for pre-judgment and post-judgment interest; for all costs of litigation; for her attorney's fees; and for all other relief to this Court may find and hold that she is entitled in law or in equity.

Respectfully submitted,

/s/ Kayla M. Applegate
Patrick R. James, Bar No. 82084
Kayla M. Applegate, Bar No. 2011161
JAMES, HOUSE, DOWNING & LUEKEN, P.A.
Post Office Box 3585
801 West Third Street
Little Rock, Arkansas 72203-3585
(501) 372-6555 – Telephone
(501) 372-6333 – Facsimile
pjames@jamesandhouse.com
kapplegate@jamesandhouse.com

ATTORNEYS FOR PLAINTIFF

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2018-Jan-18  16:55:31
60CV-18-380
C06D06 : 27 Pages

# EXHIBIT A

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

|  | Begins on Page |
|---|---|
| ONS CONTINUED . . . . . . . . . . . . . . . . . . . . . . | 1 |
| S . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |

**YOUR PROPERTY**

| | |
|---|---|
| ;ES . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| je A - Dwelling . . . . . . . . . . . . . . . . . . . . . . | 3 |
| je B - Personal Property . . . . . . . . . . . . . . . . . | 3 |
| je C - Loss of Use . . . . . . . . . . . . . . . . . . . . | 4 |
| ıal Coverages . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Coverage . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| NSURED . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| JOT INSURED . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| TLEMENT . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| )NS . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |

**YOUR LIABILITY**

| | |
|---|---|
| ;ES . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| je L - Personal Liability . . . . . . . . . . . . . . . . . | 15 |
| je M - Medical Payments to Others . . . . . . . . . . . . | 15 |
| al Coverages . . . . . . . . . . . . . . . . . . . . . . | 15 |
| )NS . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| )NS . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |

| | |
|---|---|
| ND SECTION II - CONDITIONS . . . . . . . . . . . . . . | 19 |
| 'OLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . | 20 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

insurance described in this policy:

ent of premium for the coverages you

pliance with all applicable provisions

statements in these **Declarations**.

ice of this policy, that:

ims when due and comply with the licy;

hese **Declarations** are your state-

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

the "named insured" shown in the
ouse is included if a resident of your
nd "our" mean the Company shown

ses are defined as follows:

ans physical injury, sickness, or dis-
This includes required care, loss of
resulting therefrom.

not include:

wing which are communicable: dis-
parasite, virus, or other organism, any
nsmitted by any **insured** to any other

any such disease, bacteria, parasite,
rganism by any **insured** to any other

ress, mental anguish, humiliation,
, mental injury, or any similar injury
out of actual physical injury to some

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or water-craft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1

FP-7955

vehicle to which this policy ap-
ile engaged in your employment
of a person included in 4.a. or 4.b.

ans:

nises;

er premises, other structures and
ou as a residence. This includes
s and grounds you acquire while
ct for your use as a residence;

I by you in connection with the
n 5.a. or 5.b.;

ses not owned by an **insured** but
s temporarily residing;

ented to an **insured** on which a
welling is being constructed as a
sured;

cemetery plots or burial vaults
ed;

nises occasionally rented to an
an **business** purposes;

by or rented to an **insured**. This
m land; and

uildings), rented or held for rental
to exceed a total of 500 acres,
umber of locations.

used in Section II of this policy,

hicle designed for travel on public
motor vehicle registration. A mo-
e in dead storage on an **insured**
otor vehicle;

iler designed for travel on public
to motor vehicle registration. A
or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor
vehicle;**

c.  a motorized golf cart, snowmobile, motorized bicycle,
motorized tricycle, all-terrain vehicle or any other
similar type equipment owned by an **insured** and
designed or used for recreational or utility purposes
off public roads, while off an **insured location.** A
motorized golf cart while used for golfing purposes is
not a **motor vehicle;** and

d.  any vehicle while being towed by or carried on a
vehicle included in 6.a., 6.b. or 6.c.

7.  "**occurrence**", when used in Section II of this policy,
means an accident, including exposure to conditions,
which results in:

a.  **bodily injury;** or

b.  **property damage;**

during the policy period. Repeated or continuous expo-
sure to the same general conditions is considered to be
one occurrence.

8.  "**property damage**" means physical damage to or de-
struction of tangible property, including loss of use of this
property. Theft or conversion of property by any **insured**
is not **property damage.**

9.  "**residence employee**" means an employee of an **in-
sured** who performs duties, including household or do-
mestic services, in connection with the maintenance or
use of the **residence premises.** This includes employ-
ees who perform similar duties elsewhere for you. This
does not include employees while performing duties in
connection with the **business** of an **insured.**

10. "**residence premises**" means:

a.  the one, two, three or four-family dwelling, other
structures and grounds; or

b.  that part of any other building;

where you reside and which is shown in the **Declara-
tions.**

2                                                      FP-7955

# SECTION I - COVERAGES

## WELLING

:over the dwelling used principally as a
e on the **residence premises** shown in
**S.**

is:

ttached to the dwelling;

d supplies located on or adjacent to the
**premises** for use in the construction,
repair of the dwelling or other structures
**ence premises;**

floor slab and footings supporting the
d

carpeting attached to the dwelling.

**sion.** We cover other structures on the
**nises,** separated from the dwelling by
ictures connected to the dwelling by only
le, or similar connection are considered
tures.

other structures:

intly attached to or otherwise forming a
ialty;

e or in part for **business** purposes; or

ld for rental to a person not a tenant of
unless used solely as a private garage.

**ivered.** We do not cover:

ng the land necessary to support any
property;

quired to replace, rebuild, stabilize, or
store the land; or

repair techniques designed to compen-
irevent land instability to any property,
ot insured under Coverage A.

## RSONAL PROPERTY

ed. ~~We cover personal property owned
sured while it is anywhere in the world.~~
~~uctures not permanently attached to~~ or

otherwise forming a part of the realty. At your request, we
will cover personal property owned by others while the
property is on the part of the **residence premises** occu
pied exclusively by an **insured**. At your request, we wi
also cover personal property owned by a guest or a
**residence employee**, while the property is in any othe
residence occupied by an **insured**.

We cover personal property usually situated at an **in
sured's** residence, other than the **residence premises**
for up to $1,000 or 10% of the Coverage B limit, which
ever is greater. This limitation does not apply to persona
property in a newly acquired principal residence for the
first 30 days after you start moving the property there. I
the **residence premises** is a newly acquired principa
residence, personal property in your immediate pas
principal residence is not subject to this limitation for the
first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase
the Coverage B limit. The special limit for each of the
following categories is the total limit for each loss for al:
property in that category:

a.  $200 on money, coins and medals, including any of
these that are a part of a collection, and bank notes;

b.  $1,000 on property used or intended for use in a
**business**, including merchandise held as samples or
for sale or for delivery after sale, while on the **resi-
dence premises**. This coverage is limited to $250 on
such property away from the **residence premises**.

Electronic data processing system equipment or the
recording or storage media used with that equipment
is not included under this coverage;

c.  $1,000 on securities, checks, cashier's checks, trav-
eler's checks, money orders and other negotiable
instruments, accounts, deeds, evidences of debt,
letters of credit, notes other than bank notes, manu-
scripts, passports and tickets;

d.  $1,000 on watercraft of all types and outboard mo-
tors, including their trailers, furnishings and equip-
ment;

e.  $1,000 on trailers not used with watercraft;

3

FP-7955

s, trading cards and comic books,
ese that are a part of a collection;

theft of firearms;

theft of silverware and goldware;

ic data processing system equip-
rding or storage media used with
here is no coverage for said equip-
hile located away from the resi-
except when said equipment or
d from the **residence premises** for
air, servicing or temporary use. An
equipment and media are covered
ce away from home; and

e article and $10,000 in the aggre-
theft of any rug, carpet (except
), tapestry, wall-hanging or other

**d**. We do not cover:

described and specifically insured
insurance;

sh;

tor propelled vehicle or machine,
, designed for movement on land.
e not licensed for use on public
e:

service the **insured location**; or

ssisting the handicapped;

ents for the recording or reproduc-
ianently attached to an engine or
ehicle. We do not cover tapes,
other mediums that may be used
or instruments while in the vehicle;

ers, boarders, tenants and other
ed to an **insured**. We do cover
rs, boarders and other residents
**ed**;

rented or held for rental to others
his exclusion does not apply to

property of an **insured** in a sleeping room rented to
others by an **insured**;

h.  property rented or held for rental to others away from
the **residence premises**;

i.  any citizens band radios, radio telephones, radio
transceivers, radio transmitters, radar or laser detec-
tors, antennas and other similar equipment perma-
nently attached to an engine or motor propelled
vehicle;

j.  books of account, abstracts, drawings, card index
systems and other records. This exclusion does not
apply to any recording or storage media for electronic
data processing. We will cover the cost of blank
books, cards or other blank material plus the cost of
labor you incur for transcribing or copying such re-
cords; or

k.  recording or storage media for electronic data proc-
essing that cannot be replaced with other of like kind
and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1.  **Additional Living Expense.** ~~When a Loss Insured
causes the residence premises to become uninhabit-
able, we will cover the necessary increase in cost you
incur to maintain your standard of living for up to 24
months. Our payment is limited to incurred costs for the
shortest of: (a) the time required to repair or replace the
premises; (b) the time required for your household to
settle elsewhere; or (c) 24 months.~~ This coverage is not
reduced by the expiration of this policy.

2.  **Fair Rental Value.** When a Loss Insured causes that part
of the **residence premises** rented to others or held for
rental by you to become uninhabitable, we will cover its
fair rental value. Payment shall be for the shortest time
required to repair or replace the part of the premises
rented or held for rental, but not to exceed 12 months.
This period of time is not limited by expiration of this
policy. Fair rental value shall not include any expense that
does not continue while that part of the **residence prem-
ises** rented or held for rental is uninhabitable.

3.  **Prohibited Use.** When a civil authority prohibits your use
of the **residence premises** because of direct damage to
a neighboring premises by a Loss Insured, we will cover
any resulting Additional Living Expense and Fair Rental

4                                                           FP-7955

e is for a period not exceeding two weeks hibited.

ır loss or expense due to cancellation of ement.

**IONAL COVERAGES**

tional Coverages are subject to all the xclusions and conditions of this policy.

ıl. ~~We will pay the reasonable expenses~~ ~~removal of debris of covered property~~ ~~oss Insured~~. This expense is included in g to the damaged property.

nt payable for the property damage plus ıval exceeds the limit for the damaged ditional 5% of that limit is available for xpense. This additional amount of insurapply to Additional Coverage, item 3. nd Other Plants.

~~up to $500 in the aggregate for each loss~~ ~~ısonable expenses you incur in the ra-~~ ~~bris from the residence premises when~~ ~~ıused a Loss Insured to Coverage A~~

ıairs. If damage is caused by a Loss ~~pay the reasonable and necessary cost~~ ~~mporary repairs to covered property to~~ ~~erty from further immediate damage~~ or ıge does not increase the limit applying eing repaired.

**and Other Plants.** We cover outdoor ants or lawns, on the **residence prem**loss caused by the following: Fire or sion, Riot or civil commotion, Aircraft, vned or operated by a resident of the ises), Vandalism or malicious mischief

~~s coverage, including the removal of~~ ~~exceed 5% of the amount shown in the~~ ~~COVERAGE A – DWELLING~~. We will in $500 for any one outdoor tree, shrub g debris removal expense. This cover- e the limit otherwise applicable. We do ty grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up t $500 for your liability assumed by contract or agreemer for fire department charges. This means charges incurred when the fire department is called to save or protec covered property from a Loss Insured. No deductibl applies to this coverage. This coverage may increase th limit otherwise applicable.

5. **Property Removed.** Covered property, while being re moved from a premises endangered by a Loss Insured is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit ap plying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured.**

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

FP-7955

pay for the loss equals our limit of

le or a suit is brought against an
ility under the Credit Card or Bank
Card coverage, we will provide a
lefense is at our expense by coun-
:e.

ption to defend at our expense an
**insured's** bank against any suit
·ment of payment under the For-

le cover accidental direct physical
indirectly by a change of tempera-
m power interruption that takes
**e premises**. The power interrup-
/ a Loss Insured occurring on the
The power lines off the **residence**
n energized. This coverage does
pplying to the damaged property.

ts. Coverage B is extended to
3ep freeze or refrigerated units on
3s for loss due to power failure or
1echanical failure or power failure
1sonable means must be used to
3ured from further damage or this
r failure or mechanical failure shall

·om an electrical outlet; or

trical switch unless caused by a

t increase the limit applying to the

l pay $1,000 for information which
ction in connection with a fire loss
/ this policy. This coverage may
3rwise applicable. However, the
be increased regardless of the
viding information.

cover direct physical loss to a
overed property contained in a
he eruption of a volcano when the
ediately caused by:

a.   volcanic blast or airborne shock waves;

b.   ash, dust or particulate matter; or

c.   lava flow.

We will also pay for the removal of that ash, dust or
particulate matter which has caused direct physical loss
to a covered building or covered property contained in a
building.

One or more volcanic eruptions that occur within a 72-
hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the
damaged property.

11. **Collapse**. We insure only for direct physical loss to
covered property involving the sudden, entire collapse of
a building or any part of a building.

Collapse means actually fallen down or fallen into pieces.
It does not include settling, cracking, shrinking, bulging,
expansion, sagging or bowing.

The collapse must be directly and immediately caused
only by one or more of the following:

a.   perils described in **SECTION I - LOSSES INSURED,
     COVERAGE B - PERSONAL PROPERTY**. These
     perils apply to covered building and personal property
     for loss insured by this Additional Coverage;

b.   hidden decay of a supporting or weight-bearing struc-
     tural member of the building;

c.   hidden insect or vermin damage to a structural mem-
     ber of the building;

d.   weight of contents, equipment, animals or people;

e.   weight of ice, snow, sleet or rain which collects on a
     roof; or

f.   use of defective material or methods in the construc-
     tion (includes remodeling or renovation) of the build-
     ing, if the collapse occurs during the course of the
     construction of the building.

Loss to an awning, fence, patio, pavement, swimming
pool, underground pipe, flue, drain, cesspool, septic tank,
foundation, retaining wall, bulkhead, pier, wharf or dock
is not included under items b., c., d., e. and f. unless the

6

t and immediate cause of the collapse of

oes not increase the limit applying to the rty.

pay the reasonable expenses you incur on exterior doors of the dwelling located ce premises, when the keys to those of a covered theft loss.

pplies to this coverage.

₹AGE

r shown in the **Declarations** for Cover- and, when applicable, Option ID will be

increased at the same rate as the increase in the Inflatior Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability fo Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflatior Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

VELLING

ental direct physical loss to the property ge A, except as provided in **SECTION I -** JRED.

RSONAL PROPERTY

dental direct physical loss to property age B caused by the following perils, SECTION I - LOSSES NOT INSURED:

g.

hail. This peril does not include loss to ied in a building caused by rain, snow, ust. This limitation does not apply when of wind or hail damages the building fing in a roof or wall and the rain, snow, ist enters through this opening.

es loss to watercraft of all types and their ngs, equipment, and outboard motors, a fully enclosed building.

mmotion.

ing self-propelled missiles and space-

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willfu and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Prop erty of a student who is an **insured** is covered while located at a residence away from home, i the theft is committed by a person who is not ar **insured;**

      (2) in or to a dwelling under construction or of mate rials and supplies for use in the construction unti the dwelling is completed and occupied; or

7

FP-7955

f a **residence premises** rented to

a tenant, members of the tenant's
, or the tenant's employees;

bank notes, bullion, gold, gold-
r, silverware, pewterware, plati-
; and medals;

s, checks, cashier's checks, trav-
ks, money orders and other nego-
struments, accounts, deeds,
of debt, letters of credit, notes
bank notes, manuscripts, pass-
ts and stamps; or

watches, fur garments and gar-
med with fur, precious and semi-
tones;

ft that occurs away from the **resi-**
of:

at any other residence owned,
occupied by an **insured**, except
**red** is temporarily residing there.
student who is an **insured** is cov-
residence away from home;

ll types, including their furnishings,
I outboard motors; or

mpers designed to be pulled by or
hicle.

**remises** is a newly acquired prin-
operty in the immediate past prin-
hall not be considered property
sidence premises for the first 30
ption of this policy.

~~peril does not include loss to prop-~~
~~lding unless the roof or an exterior~~
~~first damaged by a falling object.~~
object itself is not included.

or **sleet** which causes damage to
a building.

12. **Sudden and accidental discharge or overflow** of water
or steam from within a plumbing, heating, air conditioning
or automatic fire protective sprinkler system, or from
within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or
steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from
outside the **residence premises** plumbing system
that enters through sewers or drains, or water which
enters into and overflows from within a sump pump,
sump pump well or any other system designed to
remove subsurface water which is drained from the
foundation area; or

d. caused by or resulting from continuous or repeated
seepage or leakage of water or steam which occurs
over a period of time and results in deterioration,
corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking,
burning or bulging** of a steam or hot water heating
system, an air conditioning or automatic fire protective
sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated
seepage or leakage of water or steam which occurs
over a period of time and results in deterioration,
corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or auto-
matic fire protective sprinkler system, or of a household
appliance.

This peril does not include loss on the **residence prem-
ises** while the dwelling is vacant, unoccupied or being
constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and
appliances of water.

8

FP-7955

ccidental damage to electrical appli-
fixtures and wiring from an increase or
ficially generated electrical current. We
,000 under this peril for each damaged
bove.

16. **Breakage of glass**, meaning damage to personal prop
erty caused by breakage of glass which is a part of a
building on the **residence premises**. There is no cover-
age for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

e for any loss to the property described
hich consists of, or is directly and imme-
y, one or more of the perils listed in items
w, regardless of whether the loss occurs
dually, involves isolated or widespread
rom natural or external forces, or occurs
y combination of these:

cept as specifically provided in **SEC-
)ITIONAL COVERAGES, Collapse;**

plumbing, heating, air conditioning or
e protective sprinkler system, or of a
ppliance, or by discharge, leakage or
n within the system or appliance caused
This exclusion only applies while the
acant, unoccupied or being constructed.
n does not apply if you have used rea-
to:

heat in the building; or

the water supply and drain the system
iances of water;

wing, pressure or weight of water or ice,
en by wind or not, to a swimming pool,
a, including their filtration and circulation
ce, pavement, patio, foundation, retain-
head, pier, wharf or dock;

) a dwelling under construction, or of
d supplies for use in the construction,
lling is completed and occupied;

malicious mischief or breakage of glass
azing materials if the dwelling has been
ore than 30 consecutive days immedi-
he loss. A dwelling being constructed is
ad vacant;

f. continuous or repeated seepage or leakage of water
or steam from a:

(1) heating, air conditioning or automatic fire protec-
tive sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or
around any shower stall, shower bath, tub instal-
lation, or other plumbing fixture, including their
walls, ceilings or floors;

which occurs over a period of time. If loss to covered
property is caused by water or steam not otherwise
excluded, we will cover the cost of tearing out and
replacing any part of the building necessary to repair
the system or appliance. We do not cover loss to the
system or appliance from which the water or steam
escaped;

g. wear, tear, marring, scratching, deterioration, inher-
ent vice, latent defect or mechanical breakdown;

h. corrosion, electrolysis or rust;

i. mold, fungus or wet or dry rot;

j. contamination;

k. smog, smoke from agricultural smudging or industrial
operations;

l. settling, cracking, shrinking, bulging, or expansion of
pavements, patios, foundation, walls, floors, roofs or
ceilings;

m. birds, vermin, rodents, insects, or domestic animals.
We do cover the breakage of glass or safety glazing
material which is a part of a building, when caused
by birds, vermin, rodents, insects or domestic ani-
mals; or

9

FP-7955

presence of tree, shrub or plant

e for any resulting loss from items
ne resulting loss is itself a Loss Not
n.

er any coverage for any loss which
red in the absence of one or more
ded events. We do not insure for
of: (a) the cause of the excluded
ses of the loss; or (c) whether other
ently or in any sequence with the
iduce the loss; or (d) whether the
y or gradually, involves isolated or
arises from natural or external
result of any combination of these:

iw, meaning enforcement of any
regulating the construction, repair
building or other structure.

, meaning the sinking, rising, shift-
contracting of earth, all whether
ater or not. Earth movement in-
limited to earthquake, landslide,
e, sinkhole, subsidence, erosion or
ng from improper compaction, site
ither external forces. Earth move-
s volcanic explosion or lava flow,
ally provided in **SECTION I - AD-
RAGES, Volcanic Action.**

insure for any direct loss by fire
th movement, provided the result-
lf a Loss Insured.

neaning:

water, waves, tidal water, tsunami,
iw of a body of water, or spray from
all whether driven by wind or not;

age from outside the **residence**
mbing system that enters through
ns, or water which enters into and
n within a sump pump, sump pump
ther system designed to remove

subsurface water which is drained from the foun-
dation area; or

(3) water below the surface of the ground, including
water which exerts pressure on, or seeps or leaks
through a building, sidewalk, driveway, founda-
tion, swimming pool or other structure.

However, we do insure for any direct loss by fire,
explosion or theft resulting from water damage, pro-
vided the resulting loss is itself a Loss Insured.

d. ~~Neglect, meaning neglect of the Insured to use all~~
~~reasonable means to save and preserve property at~~
~~and after the time of a loss, or when property is~~
~~endangered.~~

e. **War,** including any undeclared war, civil war, insur-
rection, rebellion, revolution, warlike act by a military
force or military personnel, destruction or seizure or
use for a military purpose, and including any conse-
quence of any of these. Discharge of a nuclear
weapon shall be deemed a warlike act even if acci-
dental.

f. **Nuclear Hazard,** meaning any nuclear reaction, ra-
diation, or radioactive contamination, all whether con-
trolled or uncontrolled or however caused, or any
consequence of any of these. Loss caused by the
nuclear hazard shall not be considered loss caused
by fire, explosion or smoke.

However, we do insure for any direct loss by fire
resulting from the nuclear hazard, provided the result-
ing fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss con-
sisting of one or more of the items below. Further, we do
not insure for loss described in paragraphs 1. and 2.
immediately above regardless of whether one or more of
the following: (a) directly or indirectly cause, contribute to
or aggravate the loss; or (b) occur before, at the same
time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person,
group, organization or governmental body whether
intentional, wrongful, negligent, or without fault;

10                                                        FP-7955

kness, inadequacy, fault or unsoundness

g, zoning, development, surveying, siting;

specifications, workmanship, construc-
ading, compaction;

ls used in construction or repair; or

ance;

of any property (including land, structures, or in
provements of any kind) whether on or off the **res
dence premises**; or

c.   weather conditions.

However, we do insure for any resulting loss from item
a., b. and c. unless the resulting loss is itself a Loss N
Insured by this Section.

# SECTION I - LOSS SETTLEMENT

ement provisions shown in the **Declara-**
settle covered property losses according

(4)  we will not pay for increased costs resulting fror
enforcement of any ordinance or law regulatin
the construction, repair or demolition of a buildin
or other structure, except as provided under **Op
tion OL - Building Ordinance or Law Cove
age.**

**WELLING**

ent Cost Loss Settlement -
uction.

~~the cost to repair or replace with similar~~
~~t and for the same use on the premises~~
~~e Declarations, the damaged part of the~~
~~vered under SECTION I - COVERAGES,~~
~~E  A  -  DWELLING,  except  for  wood~~
~~ject to the following:~~

~~ual repair or replacement is completed;~~
~~nay only the actual cash value at the time~~
~~oss of the damaged part of the property,~~
~~e applicable limit of liability shown in the~~
~~itions, not to exceed the cost to repair or~~
~~the damaged part of the property;~~

~~e repair or replacement is actually com-~~
~~we will pay the covered additional amount~~
~~ually and necessarily spend to repair or~~
~~the damaged part of the property, or an~~
~~up to the applicable limit of liability shown~~
~~eclarations, whichever is less;~~

~~e any additional payments on a replace-~~
~~ist basis, you must complete the actual~~
~~replacement of the damaged part of the~~
~~within two years after the date of loss,~~
~~ify us within 30 days after the work has~~
~~mpleted; and~~

b.   Wood Fences: We will pay the actual cash value a
the time of loss for loss or damage to wood fence:
not to exceed the limit of liability shown in the **Decla
rations** for COVERAGE A - DWELLING EXTEN
SION.

## 2. A2 - Replacement Cost Loss Settlement -
Common Construction.

a.   ~~We will pay the cost to repair or replace with commo~~
~~construction and for the same use on the premise~~
~~shown in the Declarations, the damaged part of th~~
~~property covered under SECTION I - COVERAGES~~
~~COVERAGE A - DWELLING,~~ except for woo
fences, subject to the following:

(1)  ~~we will pay only for repair or replacement of th~~
~~damaged part of the property with common con~~
~~struction techniques and materials commonl~~
~~used by the building trades in standard ne~~
~~construction.~~ We will not pay the cost to repair c
replace obsolete, antique or custom constructio
with like kind and quality;

(2)  ~~until actual repair or replacement is completed~~
~~we will pay only the actual cash value at the tim~~
~~of the loss of the damaged part of the property~~
~~up to the applicable limit of liability shown in th~~
~~Declarations, not to exceed the cost to repair c~~

FP-795

damaged part of the property as a.(1) above;

...air or replacement is actually com-
...scribed in a.(1) above, we will pay
additional amount you actually and
spend to repair or replace the dam-
the property, or an amount up to the
...nit of liability shown in the **Declara-**
...ever is less;

y additional payments on a replace-
...asis, you must complete the actual
...acement of the damaged part of the
...in two years after the date of loss,
...s within 30 days after the work has
...ted; and

...ay for increased costs resulting from
...of any ordinance or law regulating
...ion, repair or demolition of a building
...:ture, except as provided under **Op-**
**...uilding Ordinance or Law Cover-**

Ve will pay the actual cash value at
...or loss or damage to wood fences,
...e limit of liability shown in the **Decla-**
**...'ERAGE A - DWELLING EXTEN-**

...)NAL PROPERTY

**...ement Cost Loss Settlement.**

...cost to repair or replace property
...:CTION I - COVERAGES, COVER-**
**...'NAL PROPERTY,** except for prop-
...b. below, subject to the following:

...replacement is completed, we will
...cost to repair or replace less depre-

...replacement is completed, we will
...ence between the cost to repair or
...depreciation and the cost you have

...actually and necessarily spent to repair or replace
the property; and

   (3) if property is not repaired or replaced within two
years after the date of loss, we will pay only the
cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

   (1) antiques, fine arts, paintings, statuary and similar
articles which by their inherent nature cannot be
replaced with new articles;

   (2) articles whose age or history contribute substan-
tially to their value including, but not limited to,
memorabilia, souvenirs and collectors items; and

   (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the
smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy;
or

   (4) any applicable Coverage B limit of liability.

**2. B2 - Depreciated Loss Settlement.**

a. We will pay the cost to repair or replace less depre-
ciation at the time of loss for property covered under
**SECTION I - COVERAGES, COVERAGE B - PER-
SONAL PROPERTY,** except for property listed in
item b. below.

b. We will pay market value at the time of loss for:

   (1) antiques, fine arts, paintings, statuary and similar
articles which by their inherent nature cannot be
replaced with new articles;

   (2) articles whose age or history contribute substan-
tially to their value including, but not limited to,
memorabilia, souvenirs and collectors items; and

   (3) property not useful for its intended purpose.

FP-7955

not pay an amount exceeding the
owing for items a. and b. above:

replace at the time of loss;

t of repair;

# SECTION I - CONDITIONS

t and Limit of Liability. Even if more
as an insurable interest in the property
not be liable:

l for an amount greater than the in-
st; or

he applicable limit of liability.

r Loss. After a loss to which this
ply, you shall see that the following
ed:

notice to us or our agent. Also notify
loss is caused by theft. Also notify the
mpany or bank if the loss involves a
ank fund transfer card;

operty from further damage or loss,
ble and necessary temporary repairs
otect the property, keep an accurate
r expenditures; -

entory of damaged or stolen personal
y in detail the quantity, description,
ent cost and amount of loss. Attach to
ll bills, receipts and related documents
te the figures in the inventory;

reasonably require:

damaged property;

with records and documents we re-
permit us to make copies;

and subscribe, while not in the pres-
y other **insured**:

ents; and

nations under oath; and

(3) any special limit of liability described in the policy;
or

(4) any applicable Coverage B limit of liability.

(4) produce employees, members of the **insured's**
household or others for examination under oath
to the extent it is within the **insured's** power to
– do so; and

e. submit to us, within 60 days after the loss, your
signed, sworn proof of loss which sets forth, to the
best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the prop-
erty involved and all encumbrances on the prop-
erty;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property
during the term of this policy;

(5) specifications of any damaged building and de-
tailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal prop-
erty described in 2.c.;

(7) receipts for additional living expenses incurred
and records supporting the fair rental value loss;
and

(8) evidence or affidavit supporting a claim under the
Credit Card, Bank Fund Transfer Card, Forgery
and Counterfeit Money coverage, stating the
amount and cause of loss.

3. **Loss to a Pair or Set**. In case of loss to a pair or set, we
may elect to:

a. repair or replace any part to restore the pair or set to
its value before the loss; or

b. pay the difference between the depreciated value of
the property before and after the loss.

FP-7955

d we fail to agree on the amount of
demand that the amount of the loss
f either makes a written demand for
I select a competent, disinterested
I notify the other of the appraiser's
's of receipt of the written demand.
hall then select a competent, impar-
appraisers are unable to agree upon
days, you or we can ask a judge of
e state where the **residence prem-**
ect an umpire. The appraisers shall
of the loss. If the appraisers submit
agreement to us, the amount agreed
ount of the loss. If the appraisers fail
onable time, they shall submit their
pire. Written agreement signed by
e shall set the amount of the loss.
be paid by the party selecting that
nses of the appraisal and the com-
re shall be paid equally by you and

ι loss covered by this policy is also
rance, we will pay only our share of
the proportion of the loss that the
this policy bears to the total amount
the loss.

ction shall be brought unless there
a with the policy provisions. The
d within one year after the date of

ι repair or replace any part of the
stolen with similar property. Any
replace becomes our property.

If adjust all losses with you. We will
other person is named in the policy
to receive payment. Loss will be
we receive your proof of loss and:

With you;

f a final judgment; or

an appraisal award with us.

operty. We need not accept any
y an **insured**.

10. **Mortgage Clause**. The word "mortgagee" includes trus-
    tee.

    a.  If a mortgagee is named in this policy, any loss
        payable under Coverage A shall be paid to the mort-
        gagee and you, as interests appear. If more than one
        mortgagee is named, the order of payment shall be
        the same as the order of precedence of the mort-
        gages.

    b.  If we deny your claim, that denial shall not apply to a
        valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occu-
            pancy or substantial change in risk of which the
            mortgagee is aware;

        (2) pays on demand any premium due under this
            policy, if you have not paid the premium; and

        (3) submits a signed, sworn statement of loss within
            60 days after receiving notice from us of your
            failure to do so. Policy conditions relating to Ap-
            praisal, Suit Against Us and Loss Payment apply
            to the mortgagee.

    c.  If this policy is cancelled by us, the mortgagee shall
        be notified at least 10 days before the date cancella-
        tion takes effect. Proof of mailing shall be proof of
        notice.

    d.  If we pay the mortgagee for any loss and deny
        payment to you:

        (1) we are subrogated to all the rights of the mortga-
            gee granted under the mortgage on the property;
            or

        (2) at our option, we may pay to the mortgagee the
            whole principal on the mortgage plus any accrued
            interest. In this event, we shall receive a full
            assignment and transfer of the mortgage and all
            securities held as collateral to the mortgage debt.

    e.  Subrogation shall not impair the right of the mortga-
        gee to recover the full amount of the mortgagee's
        claim.

11. **No Benefit to Bailee**. We will not recognize an assign-
    ment or grant coverage for the benefit of a person or
    organization holding, storing or transporting property for

FP-7955

es regardless of any other provision of

. If you or any person insured under this
procures a loss to property covered

under this policy for the purpose of obtaining insurance
benefits, then this policy is void and we will not pay you
or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

**RSONAL LIABILITY**

a suit is brought against an **insured** for
f **bodily injury** or **property damage** to
applies, caused by an **occurrence**, we

it of liability for the damages for which
jally liable; and

se at our expense by counsel of our
make any investigation and settle any
ve decide is appropriate. Our obligation
m or suit ends when the amount we pay
effect settlement or satisfy a judgment
**occurrence**, equals our limit of liability.

**DICAL PAYMENTS TO OTHERS**

essary medical expenses incurred or
I within three years from the date of an
lily injury. Medical expenses means
or medical, surgical, x-ray, dental, am-
ofessional nursing, prosthetic devices
This coverage applies only:

i **insured location** with the permission

**insured location**, if the **bodily injury**:

i condition on the **insured location** or
ediately adjoining;

he activities of an **insured**;

i **residence employee** in the course of
e **employee's** employment by an **in-**

in animal owned by or in the care of an

imployee if the **occurrence** causing
irs off the **insured location** and arises

out of or in the course of the **residence employee's**
employment by an **insured**.

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **in-sured** in suits we defend;

   b. premiums on bonds required in suits we defend, but
      not for bond amounts greater than the Coverage L
      limit. We are not obligated to apply for or furnish any
      bond;

   c. reasonable expenses an **insured** incurs at our re-
      quest. This includes actual loss of earnings (but not
      loss of other income) up to $100 per day for aiding us
      in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured**
      on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after
      entry of the judgment and before we pay or tender,
      or deposit in court that part of the judgment which
      does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to
   others incurred by an **insured** for **bodily injury** covered
   under this policy. We will not pay for first aid to you or any
   other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of
      others caused by an **insured**.

   b. We will not pay more than the smallest of the following
      amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15                                                        FP-7955

ıne **occurrence.**

ır **property damage:**

; otherwise provided in this policy;

tionally by an **insured** who is 13
or older;

ther than a rented golf cart, owned
to an **insured**, a tenant of an in-
esident in your household; or

## SECTION II - EXCLUSIONS

erage M do not apply to:

property damage:

r_ expected or intended by the in-

esult of wilful and malicious acts of

property damage arising out of
ts of any **insured** or the rental or
of any part of any premises by any
:lusion does not apply:

hich are ordinarily incident to non-
suits;

o Coverage L to the occasional or
iness pursuits of an **insured** who
ears of age;

r holding for rental of a residence

asional basis for the exclusive use
ence;

nless intended for use as a resi-
more than two roomers or boarders;

an office, school, studio or private

lling on the **residence premises** is
r four-family dwelling and you oc-

---

(4) arising out of:

    (a) **business** pursuits;

    (b) any act or omission in connection with a
premises an **insured** owns, rents or controls,
other than the **insured location**; or

    (c) the ownership, maintenance, or use of a **mo-
tor vehicle**, aircraft, or watercraft, including
airboat, air cushion, personal watercraft, sail
board or similar type watercraft.

cupy one part and rent or hold for rental the other
part; or

(5) to farm land (without buildings), rented or held for
rental to others, but not to exceed a total of 500
acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the
rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any
premises currently owned or rented to any **insured**
which is not an **insured location**. This exclusion
does not apply to **bodily injury** to a **residence
employee** arising out of and in the course of the
**residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the
ownership, maintenance, use, loading or unloading
of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented
or loaned to any **insured**; or

(3) a watercraft:

    (a) owned by or rented to any **insured** if it has
inboard or inboard-outdrive motor power of
more than 50 horsepower;

    (b) owned by or rented to any **insured** if it is a
sailing vessel, with or without auxiliary power,
26 feet or more in overall length;

16

FP-7955

ed by one or more outboard motors
ore than 25 total horsepower owned by
sured;

ated as an airboat, air cushion, or simi-
e of craft; or

d by any **insured** which is a personal
raft using a water jet pump powered by
rnal combustion engine as the primary
e of propulsion.

does not apply to **bodily injury** to a
ployee arising out of and in the course
**nce employee's** employment by an
usion e.(3) does not apply while the
n the **residence premises**;

or **property damage** arising out of:

tment by any **insured** to any person;

vision by any **insured** of any person;

y statutorily imposed on any **insured**;

ty assumed through an unwritten or
eement by any **insured**;

the ownership, maintenance or use of
atercraft, or **motor vehicle** which is not
Section II of this policy;

or **property damage** caused directly
war, including undeclared war, or any
luding destruction or seizure or use for
oose, or any consequence of these.
a nuclear weapon shall be deemed a
en if accidental;

o you or any **insured** within the mean-
r b. of the definition of **insured**.

also applies to any claim made or suit
st you or any **insured** to share dam-
epay someone else who may be obli-
amages because of the **bodily injury**
ou or any **insured** within the meaning
of the definition of **insured**;

le or suit brought against any **insured**

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

  (a) any **insured**;

  (b) any employee of any **insured**; or

  (c) any other person actually or apparently act-ing on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

  (a) any **insured**;

  (b) any employee of any **insured**; or

  (c) any other person actually or apparently act-ing on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

  (1) for your share of any loss assessment charged against all members of an association of property owners; or

  (2) assumed under any unwritten contract or agree-ment, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

17

) **property damage** caused by fire,
on;

a person eligible to receive any
l to be provided or voluntarily pro-
·ed under a workers' compensation,
l disability, or occupational disease

· **property damage** for which an
is policy is also an insured under a
ıbility policy or would be an insured
ıtion upon exhaustion of its limit of
ır energy liability policy is a policy
ır Energy Liability Insurance Asso-
omic Energy Liability Underwriters,
e Association of Canada, or any of

3. Coverage M does not apply to **bodily injury**:

   a. to a **residence employee** if it occurs off the **insured
      location** and does not arise out of or in the course of
      the **residence employee's** employment by an in-
      **sured**;

   b. to a person eligible to receive any benefits required
      to be provided or voluntarily provided under any
      workers' compensation, non-occupational disability
      or occupational disease law;

   c. from nuclear reaction, radiation or radioactive con-
      tamination, all whether controlled or uncontrolled or
      however caused, or any consequence of any of
      these;

   d. to a person other than a **residence employee** of an
      **insured**, regularly residing on any part of the **insured
      location**.

## SECTION II - CONDITIONS

ıe Coverage L limit is shown in the
our limit for all damages from each
ıss of the number of **insureds**,
ıns injured.

is shown in the **Declarations**. This
dical expense for **bodily injury** to
ult of one accident.

ance. This insurance applies sepa-
d. This condition shall not increase
any one **occurrence**.

case of an accident or **occurrence**,
orm the following duties that apply.
with us in seeing that these duties

e to us or our agent as soon as
sets forth:

this policy and **insured**;

/ailable information on the time,
:umstances of the accident or oc-
l

    (3) names and addresses of any claimants and avail-
        able witnesses;

   b. immediately forward to us every notice, demand,
      summons or other process relating to the accident or
      **occurrence**;

   c. at our request, assist in:

    (1) making settlement;

    (2) the enforcement of any right of contribution or
        indemnity against a person or organization who
        may be liable to an **insured**;

    (3) the conduct of suits and attend hearings and
        trials; and

    (4) securing and giving evidence and obtaining the
        attendance of witnesses;

   d. under the coverage - **Damage to Property of Oth-
      ers**, exhibit the damaged property if within the **in-
      sured's** control; and

   e. the **insured** shall not, except at the **insured's** own
      cost, voluntarily make payments, assume obligations
      or incur expenses. This does not apply to expense
      for first aid to others at the time of the **bodily injury**.

                                          FP-7955

ired Person - Coverage M. The injured
appropriate, someone acting on behalf
hall:

n proof of claim, under oath if required,
racticable;

orization to allow us to obtain copies of
rts and records; and

ysical examination by a physician se-
when and as often as we reasonably

m - Coverage M. Payment under this
n admission of liability by an **insured** or

6. **Suit Against Us**. No action shall be brought against us
unless there has been compliance with the policy provi-
sions.

No one shall have the right to join us as a party to an
action against an **insured**. Further, no action with respect
to Coverage L shall be brought against us until the
obligation of the **insured** has been determined by final
judgment or agreement signed by us.

7. **Bankruptcy of an Insured**. Bankruptcy or insolvency of
an **insured** shall not relieve us of our obligation under
this policy.

8. **Other Insurance - Coverage L**. This insurance is excess
over any other valid and collectible insurance except
insurance written specifically to cover as excess over the
limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

This policy applies only to loss under
**ily injury** or **property damage** under
occurs during the period this policy is in

**Fraud**. This policy is void as to you and
i, if you or any other **insured** under this
onally concealed or misrepresented any
ircumstance relating to this insurance,
r after a loss.

**lause**. If we adopt any revision which
overage under this policy without addi-
ithin 60 days prior to or during the period
ect, the broadened coverage will imme-
is policy.

**ge of Policy Provisions**. A waiver or
ovision of this policy must be in writing
Our request for an appraisal or exami-
aive any of our rights.

cel this policy at any time by notifying us
e date cancellation is to take effect. We
he requirement that the notice be in
firming the date and time of cancellation
ng.

b. We may cancel this policy only for the reasons stated
in this condition. We will notify you in writing of the
date cancellation takes effect. This cancellation no-
tice may be delivered to you, or mailed to you at your
mailing address shown in the **Declarations**. Proof of
mailing shall be sufficient proof of notice:

(1) When you have not paid the premium, we may
cancel at any time by notifying you at least 10
days before the date cancellation takes effect.
This condition applies whether the premium is
payable to us or our agent or under any finance
or credit plan.

(2) When this policy has been in effect for less than
60 days and is not a renewal with us, we may
cancel for any reason. We may cancel by notify-
ing you at least 10 days before the date cancel-
lation takes effect.

(3) When this policy has been in effect for 60 days
or more, or at any time if it is a renewal with us,
we may cancel:

(a) if there has been a material misrepresenta-
tion of fact which, if known to us, would have
caused us not to issue this policy; or

19                                                    FP-7955

has changed substantially since the
is issued.

:el this policy by notifying you at least
re the date cancellation takes effect.

licy is written for a period longer than
may cancel for any reason at anni-
may cancel by notifying you at least
re the date cancellation takes effect.

' is cancelled, the premium for the
'ate of cancellation to the expiration
nded. When you request cancella-
emium will be based on our rules for
). The return premium may be less
t refund. When we cancel, the return
)ro rata.

'um may not be refunded with the
ttion or when the policy is returned
es, we will refund it within a reason-
e date cancellation takes effect.

y elect not to renew this policy. If we
. written notice will be delivered to
t at your mailing address shown in
e notice will be mailed or delivered
re the expiration date of this policy.
be sufficient proof of notice. '

ment of this policy shall not be valid
ritten consent.

**ured** may waive in writing before a
overy against any person. If not

waived, we may require an assignment of rights of recov-
ery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical
Payments to Others or Damage to Property of Others.

9. **Death**. If any person shown in the **Declarations** or the
spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased.
This condition applies only with respect to the prem-
ises and property of the deceased covered under this
policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **in-
sured** at the time of your death, but only while a
resident of the **residence premises**; and

(2) with respect to your property, the person having
proper temporary custody of the property until
appointment and qualification of a legal repre-
sentative.

10. **Conformity to State Law**. When a policy provision is in
conflict with the applicable law of the State in which this
policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

vision applies only as shown in the
)ject to all the terms, provisions,
; of this policy.

**sured**. The definition of **insured** is
erson or organization shown in the
ional Insured or whose name is on
vith respect to:

4; or

2. Section II - Coverages L and M but only with respect to
the **residence premises**. This coverage does not apply
to **bodily injury** to an employee arising out of or in the
course of the employee's employment by the person or
organization.

This option applies only with respect to the location shown in
the **Declarations**.

**Option BP - Business Property**. The **COVERAGE B -
PERSONAL PROPERTY, Special Limits of Liability**, item
b., for property used or intended for use in a **business**,

20                                                        FP-7955

ise held as samples or for sale or for
; changed as follows:

is replaced with the amount shown in the
r this option.

**iess Pursuits. SECTION II - EXCLU-**
modified as follows:

verage applies to the **business** pursuits
**d** who is a:

office employee, salesperson, collector,
jer; or

(except college, university and profes-
thletic coaches), school principal or
dministrator;

within the scope of the above listed

coverage is provided:

**y injury** or **property damage** arising out
iness owned or financially controlled by
ired or by a partnership of which the
is a partner or member;

**y injury** or **property damage** arising out
ndering of or failure to render profes-
rvices of any nature (other than teaching
l administration). This exclusion includes
t limited to:

outer programming, architectural, engi-
ing or industrial design services;

cal, surgical, dental or other services or
ment conducive to the health of persons
iimals; and

ity or barber services or treatment;

**ly injury** to a fellow employee of the
injured in the course of employment; or

e **insured** is a member of the faculty or
staff of a school or college:

**odily injury** or **property damage** arising
of the maintenance, use, loading or un-
ing of:

(a) draft or saddle animals, including vehi
cles for use with them; or

(b) aircraft, **motor vehicles**, recreationa
motor vehicles or watercraft, airboats, ai
cushions or personal watercraft which
use a water jet pump powered by an
internal combustion engine as the pri
mary source of propulsion;

owned or operated, or hired by or for the
**insured** or employer of the **insured** or used
by the **insured** for the purpose of instructio
in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupi
arising out of corporal punishment adminis
tered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidenta
direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The
first amount is the limit for any one article; the second amoun
is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in
this option either consisting of, or directly and immedi-
ately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual dete
rioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of tempera
tures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting
unless caused by fire, thieves or accidents to convey
ances; or

h. infidelity of an **insured's** employees or persons to
whom the insured property may be entrusted o
rented;

21                                                      FP-7955

ιy Coverage B peril except theft is **Declarations** for Coverage B, plus

heft are those shown in the **Decla-** ι. These limits apply in lieu of the ; and

any covered peril except those in ose shown in the **Declarations**.

puter. The **COVERAGE B - PER-** ɔcial **Limits of Liability**, item i., for ι system equipment and the record- d with that equipment is increased n the **Declarations** for this option.

velling **Limit**. We will settle losses uctures covered under **COVER-** ɔording to the **SECTION I - LOSS** shown in the **Declarations**.

and necessarily spend to repair or ι structures exceeds the applicable the **Declarations**, we will pay the exceed:

iability shown in the **Declarations** e Dwelling; or

limit of liability to repair or replace ɔovered under **COVERAGE A -** ɔ **Extension**.

ι. You must notify us within 90 days ιilding structure costing $5,000 or ɔr remodeling of building structures s by $5,000 or more. You must pay ue for the increased value. We will licable limit of liability shown in the o notify us of the increased value

siness. The coverage provided by o that incidental **business** occu-

**LLING, Dwelling Extension**, item

ISONAL PROPERTY is extended supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data proc-essing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not consid-ered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

    b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

       (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pur-suits of an **insured** which are necessary or incidental to the use of the **residence prem-ises** as an incidental **business**;

       (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

       (3) to the rental or holding for rental of a resi-dence of yours:

          (a) on an occasional basis for exclusive use as a residence;

          (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

          (c) in part, as an incidental **business** or pri-vate garage;

       (4) when the dwelling on the **residence prem-ises** is a two family dwelling and you occupy

FP-7955

art and rent or hold for rental the other
ɔr

m land (without buildings), rented or
ɔr rental to others, but not to exceed a
ɪf 500 acres, regardless of the number
ɪtions.

ɪes not apply to:

to an employee of an **insured** arising
ɪsidence premises as an incidental
er than to a **residence employee** while
ɪe employee's employment by an **in-**

to a pupil arising out of corporal pun-
nistered by or at the direction of the

ɪ out of any acts, errors or omissions of
ɪr any other person for whose acts an
ble, resulting from the preparation or
ata, plans, designs, opinions, reports,
ɛcifications, supervisory inspections or
ervices in the conduct of an **insured's**
ɪiness involving data processing, com-
ɪg or computer programming; or

ɹe or suit brought against any **insured**

ɪn who is in the care of any **insured**
ɹf child care services provided by or at
ɪn of:

**sured**;

ɪnployee of any **insured**; or

her person actually or apparently act-
behalf of any **insured**; or

ɪ who makes a claim because of **bodily**
any person who is in the care of any
ecause of child care services provided
e direction of:

**sured**;

---

(b) any employee of any **insured**; or

(c) any other person actually or apparently act-
ing on behalf of any **insured**.

Coverage M does not apply to any person indicated
in (1) and (2) above.

This exclusion does not apply to the occasional child
care services provided by any **insured**, or to the
part-time child care services provided by any **insured**
who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur gar-
ments and garments trimmed with fur, precious and semi-pre-
cious stones, gold other than goldware, silver other than
silverware and platinum are insured for accidental direct
physical loss or damage.

The limits for this option are shown in the **Declarations**. The
first amount is the limit for any one article; the second amount
is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in
   this option either consisting of, or directly and immedi-
   ately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual dete-
      rioration;

   b. insects or vermin;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs
      regulations;

2. our limit for loss by any Coverage B peril except theft is
   the limit shown in the **Declarations** for Coverage B, plus
   the aggregate limit;

3. our limits for loss by theft are those shown in the **Decla-
   rations** for this option; and

4. our limits for loss by any covered peril except those in
   items 2. and 3. are those shown in the **Declarations** for
   this option.

FP-7955

**dinance or Law.**

urance provided by this Building
vision will not exceed an amount
L percentage shown in the **Decla-**
age A limit shown in the **Declara-**
e loss, as adjusted by the inflation
of the policy. This is an additional
and applies only to the dwelling.

**f Dwelling.**

covered under **COVERAGE A -**
ed by a Loss Insured we will pay
t to repair or rebuild the physically
e dwelling caused by the enforce-
ning or land use ordinance or law if
irectly caused by the same Loss
irement is in effect at the time the

**s of Damaged Dwelling.**

covered under **COVERAGE A -**
ed by a Loss Insured we will also

sh and clear the site of the undam-
ne dwelling caused by the enforce-
, zoning or land use ordinance or
nent is directly caused by the same
the requirement is in effect at the
red occurs; and

aged portion of the dwelling caused
f any ordinance or law if:

ent is directly caused by the same

ent requires the demolition of por-
ame dwelling not damaged by the
sured;

or law regulates the construction
e dwelling, or establishes zoning or

land use requirements at the described premises;
and

(4) the ordinance or law is in force at the time of the
occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged por-
tion of the dwelling caused by the enforcement of a
building, zoning or land use ordinance or law if the
enforcement is directly caused by the same Loss
Insured and the requirement is in effect at the time
the Loss Insured occurs.

**4. Building Ordinance or Law Coverage Limitations.**

a. We will not pay for any increased cost of construction
under this coverage:

(1) until the dwelling is actually repaired or replaced
at the same or another premises in the same
general vicinity; and

(2) unless the repairs or replacement are made as
soon as reasonably possible after the loss, not to
exceed two years.

b. We will not pay more for loss to the undamaged
portion of the dwelling caused by the enforcement of
any ordinance or law than:

(1) the depreciated value of the undamaged portion
of the dwelling, if the dwelling is not repaired or
replaced;

(2) the amount you actually spend to replace the
undamaged portion of the dwelling if the dwelling
is repaired or replaced.

c. We will not pay more under this coverage than the
amount you actually spend:

(1) for the increased cost to repair or rebuild the
dwelling at the same or another premises in the
same general vicinity if relocation is required by
ordinance or law; and

(2) to demolish and clear the site of the undamaged
portions of the dwelling caused by enforcement
of building, zoning or land use ordinance or law.

24                                         FP-7955

er pay for more than a dwelling of the
t, floor area and style on the same or
ises as the dwelling, subject to the limit
)aragraph 1. **Coverage Provided** of this

**Option SG - Silverware and Goldware Theft**. The **COVER
AGE B - PERSONAL PROPERTY, Special Limits of Li
ability**, item h., for theft of silverware and goldware i
increased to·be the amount shown in the **Declarations** fc
this option.

₹EOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington

*ea P. Sullivan*          Secretary          *Edward B Rust Jr*          Presiden

rs, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribut·
ers of the participating policies issued by said Company such sums out of its earnings as in its judgment ar·

FP-795